# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PAUL OLIVER, et al.,

    Plaintiffs,

v.

CITY OF LENEXA, KANSAS, et al.,

    Defendants.

Case No. 2:18-cv-02374-HLT-GEB

## MEMORANDUM AND ORDER

Plaintiffs Paul Oliver and Kurt Weigel—former officers with the Lenexa Police Department—bring this action against their former employer and former colleagues, asserting violation of their due process rights pursuant to 42 U.S.C. § 1983 and several state law tort claims. Doc. 32. Defendants move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Docs. 44, 46. For the reasons set forth herein, the Court finds that Plaintiffs fail to state a § 1983 claim. And, given its dismissal of Plaintiffs' federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and therefore dismisses those claims without prejudice.

## I.    BACKGROUND[1]

### A.    Plaintiffs' Employment

Plaintiffs Paul Oliver and Kurt Weigel are former police officers of the Lenexa Police Department ("Lenexa PD"). Doc. 32 ¶¶ 1-2. Oliver resigned from employment with the Lenexa

---

[1] The following background is based on the record—including the amended complaint, exhibits to the amended complaint, and documents referenced in the amended complaint—and, for purposes of the pending motions to dismiss, accepts as true Plaintiffs' well-pleaded factual allegations. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (in ruling on a Rule 12(b)(6) motion to dismiss, the district court may consider, in addition to the complaint, documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the authenticity of the documents).

PD in April 2017 and accepted a position with his current employer, the Olathe Police Department ("Olathe PD"). *Id.* at ¶¶ 22-23. In August 2017, Weigel likewise resigned from the Lenexa PD; Weigel now works for the Johnson County Sheriff's Department. *Id.* at ¶¶ 24-25. During Plaintiffs' tenure with the Lenexa PD, Defendant Thomas Hongslo served as Chief of Police for the Lenexa PD—a position he still holds today. *Id.* at ¶ 4. Defendants Greg Bogart and Diana Mendoza were Lenexa PD officers holding the rank of Captain during Plaintiffs' tenure. *Id.* at ¶¶ 5-6. Mendoza has since left the department. *Id.* at ¶ 6.

### B. Anonymous Letters

This lawsuit ultimately stems from an anonymous letter allegedly written by Mendoza to Plaintiffs' new employers at the Olathe PD and Johnson County Sheriff's Department. Plaintiffs' allegations regarding the events surrounding the transmission of that letter are as follows. Plaintiffs allege that, on September 8, 2017, Mendoza went to the Lenexa Post Office to purchase stamps. *Id.* at ¶ 59. Mendoza purchased the stamps with a debit card issued by an organization called "Guns & Hoses." *Id.* at ¶ 62. Pictures from the kiosk where the stamps were purchased show Mendoza purchasing the stamps; she was not in uniform. *Id.* at ¶¶ 64-65; Doc. 32-3.

After purchasing the stamps, Plaintiffs allege Mendoza proceeded to draft the letter to the Olathe PD and Johnson County Sheriff's Department from her work computer, print copies of the letter using the Lenexa PD's equipment, place the letter into envelopes obtained from the Lenexa PD's supplies, address the envelopes, and place them in the mail. Doc. 32 ¶¶ 67-68, 70-71, 74-76. The letters were addressed to the Chief of Police for the Olathe PD and various Johnson County officials (including the Johnson County Commissioner, the Johnson County Manager, and the Johnson County Sheriff). *Id.* at ¶ 26; Doc. 32-2.

In the letter, which was written anonymously, Mendoza addressed the hiring practices of local law enforcement agencies. Doc. 32-2. Specifically, she professed that local departments were "hiring experienced officers from other departments at a higher rate." *Id.* She continued that "this is actually a good strategy. That is unless you start hiring the bottom of the barrel of other departments. This happens when the single goal is to fill police cars instead of caring about the character of the officer." *Id.* Mendoza then referenced a Facebook exchange—which she attached to the letters—between Oliver, Weigel, and another former Lenexa PD officer, Ted Gardner.[2] *Id.*; Doc. 45-1; Doc. 47-1. Mendoza wrote:

> As you can see from this Facebook conversation the new deputy Kurt Weigal [sic], a former Lenexa PD officer, talks about losing their minds on citizens they should be serving. The Crass Cop, who is Paul Oliver, was a former Lenexa Police officer and now works for the Olathe Police Department. Had Olathe even cared about a back ground [sic] investigation and not just filling their cars, they would have found that he had received significant discipline after kicking a civilian's car during a traffic stop. It is shameful that just as recently as this month they talk about mistreating a Hispanic male and actually STILL find it funny today.

*Id.* Mendoza concluded that "[t]he County and surrounding agencies need to stop the practice of shifting bad officers and simply hiring them by throwing more money at them." *Id.*

### C. Investigation

After learning of the letters, Weigel contacted Lenexa PD Major Dave Brown to report the issue. Doc. 32 ¶ 48. Weigel suspected that Mendoza had authored the letters. *Id.* at ¶ 44. Hongslo accordingly met with Mendoza to discuss the letters and, during this meeting, Mendoza denied

---

[2] In the Facebook post—attached as an exhibit to the motions to dismiss—Oliver, Weigel, and Gardner reference an incident that took place while they were employed by the Lenexa PD. Docs. 45-1, 47-1. Oliver's Facebook account is under the name "Crass Cop." *Id.* In the amended complaint, Plaintiffs allege Mendoza could not view the Facebook post because she was not Facebook friends with Oliver, Weigel, or Gardner. Doc. 32 ¶¶ 86-87. Plaintiffs allege Mendoza acquired the conversation from Bogart, who took a screenshot of the exchange and sent it to her. *Id.* at ¶¶ 37-40, 72. Plaintiffs further allege Bogart did so at Mendoza's request. *Id.* at ¶ 90.

any involvement. *Id.* at ¶ 49. Mendoza proceeded to send an email to Weigel repeating her denial. Doc. 32-4. The email read in pertinent part:

> Yesterday [Hongslo] showed me a picture of a letter and Facebook comments that were apparently sent to the Olathe Chief and also to the [Johnson County] Sheriff. My understanding from [Hongslo] is that you feel that I sent this letter to both. First and foremost, I want to tell you that I DID NOT send this letter to either the [Olathe] Chief or the [Johnson County] Sheriff.

*Id.* At the bottom of the email were the words "Sent from my iPad" repeated on three separate lines. *Id.* Plaintiffs allege in the amended complaint that the presence of these words means Mendoza sent drafts of her email to someone else—either Hongslo, Mendoza's husband, or members of "Command Staff"—to review and approve before sending to Weigel. Doc. 32 ¶¶ 92-94.

Upon receipt of the email, Weigel reached out to Major Brown to report that Mendoza was contacting him. *Id.* at ¶ 95. Pictures taken by a camera at the kiosk where the stamps were purchased were subsequently acquired showing that Mendoza purchased the stamps used to mail the letters to the Olathe PD and the Johnson County Sheriff's Department. *Id.* at ¶¶ 63-65; Doc. 32-3. Mendoza also subsequently sent a Facebook message regarding the incident wherein she referred to the letter as "[m]y letter." Doc. 32 ¶ 101; Doc. 32-5. Mendoza resigned from the Lenexa PD on September 23, 2017. Doc. 32 ¶ 99.

**D. Dispute**

Plaintiffs filed notices of claim with Defendant City of Lenexa ("City") on December 21, 2017, related to the actions alleged in this lawsuit. *Id.* at ¶ 12; Doc. 32-1. After Plaintiffs received notice that their claims were denied by the City, Plaintiffs filed this action on July 18, 2018, asserting claims for (1) violation of their Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983, (2) invasion of privacy (false light), (3) invasion of privacy

4

(defamation), (4) invasion of privacy (intrusion upon seclusion), (5) intentional infliction of emotional distress, (6) negligent supervision, and (7) negligent entrustment. Docs. 1, 32. Defendants now move to dismiss the amended complaint pursuant to Rule 12(b)(6) for failure to state a claim for relief. Docs. 44, 46.

## II. STANDARD

Under Rule 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's claim is facially plausible if he pleads sufficient factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully" but "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

This standard results in two principles that underlie a court's analysis. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Stated differently, though the court must accept well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). "In keeping with these [two] principles, a court considering a

motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## III. ANALYSIS

### A. Section 1983 Claim

Plaintiffs bring Count I pursuant to 42 U.S.C. § 1983, asserting violation of their Fourteenth Amendment due process rights. Doc. 32. Plaintiffs assert Count I against the City and against Hongslo, Bogart, and Mendoza in both their individual and official capacities. *Id.* Federal law recognizes a private cause of action against any person who, under color of state law, "subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 thus operates as a procedural device through which a party may seek relief for the deprivation of a constitutional right. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 615-20 (1979).

The Supreme Court has held that § 1983 claims require two essential allegations to state a cause of action. First, the plaintiff must allege that a person has deprived him of a federal right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Second, he must allege that the person who deprived him of that right acted under color of state law. *Id.* Some courts—including this Circuit—have viewed this as four separate requirements: (1) a violation of federal rights, (2) proximately caused, (3) by the conduct of a person, (4) acting under color of state law. *See, e.g.*, *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002); *Farnsworth v. City of Mulvane, Kan.*, 660 F. Supp. 2d 1217, 1223 (D. Kan. 2009). And where a party seeks to establish municipal liability, he must satisfy a fifth element: that the violation was attributable to enforcement of a municipal policy or

practice. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) (holding that "it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983").

Here, the Court finds that Plaintiffs' § 1983 claim ultimately fails because Plaintiffs have not pleaded facts sufficient to establish an element of their prima facie case: that Defendants acted under color of state law in allegedly depriving Plaintiffs of their due process rights. Plaintiffs' § 1983 claim also fails for additional reasons with respect to each defendant.[3] The Court first addresses § 1983's color of state law requirement and then turns to the additional reasons for dismissal.

### 1. No Action Under Color of State Law

As set forth above, Plaintiffs have not pleaded sufficient facts to establish Defendants acted under color of state law. Because this is an element of Plaintiffs' prima facie case, this is dispositive of Plaintiffs' § 1983 claim with respect to each defendant. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

The color of state law requirement reflects the principle that § 1983 does not ordinarily extend to purely private behavior. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936-37 (1982). And the mere fact that an individual is a law enforcement officer—even if on duty at the time of the alleged wrongful conduct—does not render his or her acts as done "under color of state law" where

---

[3] The Court notes that Plaintiffs have already amended the complaint once and, further, that Plaintiffs have not requested leave to amend again. Moreover, there is nothing in record to suggest Plaintiffs could fix the deficiencies warranting dismissal with another amendment.

7

the conduct was unrelated to any official duty or activity. *See, e.g.*, *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155-57 (10th Cir. 2016); *Haines v. Fisher*, 82 F.3d 1503, 1508 (10th Cir. 1996) (finding that on-duty police officers who staged prank robbery did not act under color of state law because they "were not using their badges of authority, i.e., their positions as policemen" to accomplish the prank).

Here, Plaintiffs have not pleaded facts to establish that Defendants acted "under color of state law" in allegedly depriving Plaintiffs of their due process rights. The Court addresses Plaintiffs' allegations with respect to each defendant as follows.

### a. Bogart

The crux of Plaintiffs' allegations as to Bogart is that Bogart "assisted" Mendoza in drafting the anonymous letters by sending her the private Facebook post that she ultimately attached to her letters to the Olathe PD and the Johnson County Sheriff's Department. Doc. 32 ¶ 124. Plaintiffs also vaguely allege Bogart "engaged in misconduct" at Mendoza's request, "failed to take any actions to stop" Mendoza from writing and sending the letters, and "acquiesced" in Mendoza's writing and sending of the letters. *Id.* None of these allegations are sufficient to establish Bogart acted under color of state law. First, these allegations are primarily conclusions devoid of any supporting facts, which are insufficient. Second, the few nonconclusory facts asserted by Plaintiffs do not establish that Bogart "used his badge of authority"—i.e., his position as a police officer—to help Mendoza send her letters. Plaintiffs do not allege, nor do they plead facts to show, that Bogart sent the Facebook post to Mendoza pursuant to some official duty or activity. Plaintiffs have not pleaded facts establishing Bogart acted under color of state law.

### b. Hongslo

Plaintiffs do not allege any affirmative acts on the part of Hongslo. Plaintiffs allege only: that Hongslo "acquiesced" in Mendoza's writing of the letters; that he "allowed" widespread misconduct among his friends within the department; that he "knew" Bogart and Mendoza had engaged in a "pattern of misconduct"; and that he "failed" to implement policies to prevent these acts from occurring, "failed" to discipline his friends, and "failed" to investigate complaints against his friends. *Id.* at ¶ 125. These conclusory and vague allegations do not show that Hongslo used his position as an officer with the Lenexa PD to assist Mendoza in sending the letters. Plaintiffs do not plead any conduct by Hongslo related to any official duty or activity. Plaintiffs have not pleaded facts sufficient to establish Hongslo acted under color of state law.

### c. The City

Plaintiffs do not attribute any affirmative acts to the City; indeed, Plaintiffs' allegations against the City closely track their allegations against Hongslo. And, as with Hongslo, Plaintiffs offer only vague conclusions devoid of any factual support. Plaintiffs allege: that the City "allowed" widespread misconduct among Hongslo and his friends; that the City "knew" there was a "pattern of misconduct" by Hongslo, Mendoza, and Bogart; and that the City "failed" to implement policies to prevent these acts from occurring, "failed" to discipline Hongslo and his friends, and "failed" to investigate complaints against Mendoza. *Id.* at ¶ 126. For the reasons set forth with respect to Bogart and Hongslo, these allegations are insufficient to plead the requisite "action under color of state law."

### d. Mendoza

Finally, Plaintiffs likewise fail to allege sufficient facts to show Mendoza engaged in the requisite action under color of state law. Almost all of the allegedly unlawful acts in this lawsuit

pertain to Mendoza. Plaintiffs allege Mendoza wrote the anonymous letters and sent them to the Olathe PD and the Johnson County Sheriff's Department. But, taking Plaintiffs' allegations against Mendoza as true, her actions in writing those anonymous letters do not plausibly allege the color-of-state-law requirement because courts have held such conduct is purely private in nature and therefore insufficient to establish § 1983 liability. *See, e.g.*, *Gleason v. McBride*, 715 F. Supp. 59, 65 (S.D.N.Y 1988) (dismissing § 1983 claim pursuant to Rule 12(b)(6) and stating "[a]ssuming for purposes of this motion that [defendants] were responsible for the anonymous letters, the fact that they were sent anonymously precludes a finding that they were acting under color of state law at the time they sent the letters"), *aff'd in part & rev'd in part on other grounds by* 869 F.2d 688 (2d Cir. 1989); *McBride v. Vill. of Michiana*, 1998 WL 276139, at *6 (W.D. Mich. 1998) (in § 1983 action alleging constitutional violations stemming from anonymous newspaper advertisement, finding no action under color of state law because defendants "could not have been misusing their power because the paper ran the ad anonymously"). Mendoza purchased stamps while off duty, she was not in uniform, and she did not use Lenexa PD funds to make the purchase. And even if she had been on duty, Plaintiffs fail to allege facts plausibly suggesting that her alleged acts were pursuant to some official duty or activity. Again, the letters were sent to individuals outside of her jurisdiction (and, if anything, to superiors) and were anonymous—Plaintiffs do not allege Mendoza signed the letters, identified herself in the letters as a police officer, or otherwise used her "badge of authority" in authoring and sending the letters.

Plaintiffs have not pleaded facts sufficient to show Defendants acted under color of state law in allegedly violating Plaintiffs' due process rights. Plaintiffs' conclusory allegation that Defendants "used the power of their positions" to send the letters at issue (Doc. 32 ¶ 134) is not

supported by the well-pleaded facts. Plaintiffs therefore fail to state a claim under § 1983 against Defendants. The Court accordingly dismisses this claim pursuant to Rule 12(b)(6).

### 2. Additional Reasons for Dismissal

Because Plaintiffs have not pleaded facts to establish the requisite action under color of state law, they are unable to establish their prima facie case and their § 1983 claim necessarily fails. Even if Plaintiffs had made such a showing, however, their constitutional claim fails for the following additional reasons with respect to each defendant.

#### a. Hongslo, Bogart, and Mendoza (Official-Capacity Claims)

Plaintiffs sue Hongslo, Bogart, and Mendoza in both their official and individual capacities. The Court first addresses the shortcomings in Plaintiffs' official-capacity claim. Suits against a municipal officer in his official capacity "generally represent only another way of pleading an action against an entity of which [the] officer is an agent" and, therefore, are not against the official himself. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell*, 436 U.S. at 690 n.55). And as set forth above, where a party seeks to hold a municipal entity liable under § 1983, he must show that the alleged constitutional violation stems from the enforcement of a municipal policy or custom. *Monell*, 436 U.S. at 694. It stands to reason, therefore, that Plaintiffs also must show a "municipal policy or custom" to establish their official-capacity claim against Hongslo, Bogart, and Mendoza. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (holding that, because the municipal entity is the real party in interest, a plaintiff must show that the entity's policy or custom played a part in the violation of federal law). A challenged practice is deemed a "municipal policy or custom" for purposes of § 1983 if it is a "formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir.

2013). Courts have held that § 1983 municipal liability may only be imposed when (1) the enforcement of a such a "policy or custom" was (2) the "moving force" behind the violation of federally protected rights. *See, e.g.*, *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997); *Monell*, 436 U.S. at 694.

Here, Plaintiffs' official-capacity claim fails for two additional reasons. First, Plaintiffs have not pleaded facts showing a "municipal policy or custom" sufficient to establish their prima facie case. In the amended complaint, Plaintiffs identify various "customs and usages" in which they claim each defendant "engaged." Doc. 32 ¶¶ 123-126. These allegations are insufficient to plausibly allege a municipal policy or custom. Plaintiffs' allegations—including that Hongslo and Bogart "acquiesced" in Mendoza's actions and that the City "failed to enact or enforce policies and standards that could have prevented" the acts alleged in this lawsuit—are primarily conclusory statements wholly devoid of any supporting facts. And although the Court declines to list each of the various "customs and usages" identified by Plaintiffs, Plaintiffs have not pleaded facts to show that any of the laundry list of alleged customs constitutes a formally promulgated policy, well-settled custom or practice, final decision by a municipal policymaker, or deliberately indifferent training or supervision, sufficient to impose municipal liability.

Second, with respect to Hongslo and Bogart, Plaintiffs' § 1983 claim also fails because Plaintiffs have not pleaded facts showing that they had any involvement in the conduct that forms the basis of the alleged constitutional violation. Respondeat superior cannot serve as a basis for § 1983 municipal liability. *See, e.g.*, *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."); *Milligan-Hitt v. Bd. of Trustees of Sheridan Cty. Sch. Dist. No. 2*, 523 F.3d 1219, 1223 (10th Cir. 2008). This necessarily means that each

defendant, whether an individual or an entity, may be held liable only for that defendant's own wrongs.

Plaintiffs' specific allegations regarding the actions of each defendant are set out in detail in Part III.A.1, *supra*. The only affirmative act Plaintiffs attribute to Bogart himself is that he allegedly "assisted" Mendoza in writing the letters by sending her the Facebook post that she attached to her letters. Doc. 32 ¶ 124. And with respect to Hongslo, Plaintiffs do not assert any affirmative acts related to the alleged constitutional deprivation. Rather, Plaintiffs vaguely assert only that Hongslo "acquiesced" in Mendoza writing the letters and that Hongslo "allowed" the misconduct by generally failing to discipline officers, failing to enact policies to prevent this from occurring, and failing to investigate complaints. *Id.* at ¶ 125. Plaintiffs have not alleged sufficient facts to show that Hongslo or Bogart engaged in any affirmative acts related to the alleged due process violation. Plaintiffs' § 1983 claim against Hongslo, Bogart, and Mendoza in their official capacities fails on these additional bases.[4]

### b. Hongslo, Bogart, and Mendoza (Individual-Capacity Claims)

Plaintiffs' claim against Hongslo, Bogart, and Mendoza in their individual capacities also fails on the basis of qualified immunity. Individual-capacity suits under § 1983 "seek to impose

---

[4] Dismissal of Plaintiffs' official-capacity claim against Hongslo, Bogart, and Mendoza is also warranted because this claim is duplicative of Plaintiffs' claim against the City (discussed in Part III.A.2.c, *infra*). The Supreme Court has held that a suit against a municipal official in his official capacity is tantamount to a suit against the municipal entity itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Where the § 1983 plaintiff chooses to sue both a municipality and its municipal officials in an official capacity, therefore, courts routinely dismiss the official-capacity claims as "duplicative" or "redundant" of the claim against the municipal entity. MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION CLAIMS & DEFENSES § 6.05 (4th ed. 2019); *see also Doe v. Douglas Cty. Sch. Dist. RE-1*, 775 F. Supp. 1414, 1416 (D. Colo. 1991) (in dismissing "redundant" official-capacity claim, stating "[a]lthough there is no Tenth Circuit decision on point, dismissal of plaintiff's redundant claim is warranted as a matter of judicial economy and efficiency"); *Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 131-32 (D.N.J. 2017) (dismissing claims against police chief in his official capacity as duplicative of claims against municipality); *Comer v. Hous. Auth. of City of Gary, Ind.*, 615 F. Supp. 2d 785, 789 (N.D. Ind. 2009) ("[S]ince municipalities can be sued directly for damages and injunctive or declaratory relief, there is no need to sue local officials in their official capacity in addition to their local government units.").

personal liability upon a government official for actions he takes under color of state law." *Graham*, 473 U.S. at 165. In an individual-capacity suit, a plaintiff need not show a connection to a governmental policy or custom. *Hafer*, 502 U.S. at 25. However, officials sued personally may assert common-law immunity defenses. *Id.* Here, Hongslo, Bogart, and Mendoza each assert qualified immunity as a defense, arguing that it shields them from individual liability for Plaintiffs' § 1983 claim.

Qualified immunity protects public officials from civil liability provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 23 (2009). Once an official has raised a defense of qualified immunity, the plaintiff bears the burden to show (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the conduct at issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).[5]

A right is "clearly established" for purposes of the second prong of the qualified-immunity analysis where it is sufficiently clear that every reasonable official would have understood that his conduct violated that right. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). To satisfy this step, courts do not require a case "directly on point," but the plaintiff must identify existing precedent— either controlling authority or "a robust 'consensus of cases of persuasive authority'"—placing the constitutional question "beyond debate." *al-Kidd*, 563 U.S. at 741-42. To do that, the precedent "must be 'particularized' to the facts of the case" before the court. *White v. Pauly*, 137 S. Ct. 548,

---

[5] The order in which the two prongs of the qualified-immunity analysis are evaluated is within the discretion of the Court. *See, e.g.*, *al-Kidd*, 563 U.S. at 735; *Brown v. Montoya*, 662 F.3d 1152, 1171 n.15 (10th Cir. 2011) (noting that, for a qualified-immunity analysis, the court "can decide first . . . whether the constitutional right the defendant has allegedly violated was clearly established"). According to the Supreme Court, this flexibility reflects an understanding that "the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson*, 555 U.S. at 242.

552 (2017) (noting that courts should not define "clearly established law" at "a high level of generality"). If a plaintiff fails to satisfy either prong, the court must grant the defendant qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

Here, exercising its discretion to consider the second prong first, the Court finds that Plaintiffs have not met their burden of showing a violation of clearly established law. In support of their constitutional claim, Plaintiffs rely on the Tenth Circuit's decision in *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144 (10th Cir. 2001), which they argue put Hongslo, Bogart, and Mendoza on notice that they "could be found to violate a constitutional right by effectively revoking a law enforcement certificate." Doc. 52 at 14; Doc. 53 at 18. But *Stidham* does not address the core inquiry here—i.e., whether it was "clearly established" that writing, or assisting in writing, anonymous letters to a former colleague's new employer opining on that employer's hiring practices (and, specifically, that employer's decision to hire the former colleague) violates an individual's Fourteenth Amendment due process rights. Indeed, the Court agrees with Hongslo, Bogart, and Mendoza that *Stidham* is inapposite to the facts at issue here. In *Stidham*, the plaintiff alleged his law enforcement certificate was effectively revoked, thereby preventing him from using that license to obtain work. *Stidham*, 265 F.3d at 1152-53. Plaintiffs do not allege their licenses were effectively revoked; rather, the crux of their allegations—taken as true—appears to be that Defendants <u>attempted</u> to effectively revoke their licenses, which is not the scenario presented in *Stidham*.

Plaintiffs identify no authority—let alone a controlling opinion or a "robust consensus" of persuasive authority—supporting their contentions or otherwise holding that due process is violated by the <u>specific facts</u> presented here. The onus is on Plaintiffs to identify existing precedent placing the constitutional question beyond debate. Because Plaintiffs have not satisfied this

15

burden, qualified immunity shields Hongslo, Bogart, and Mendoza from individual liability on Plaintiffs' § 1983 claim. Dismissal of Plaintiffs' individual-capacity claim is warranted on this additional basis.

### c. The City

Finally, Plaintiffs' § 1983 claim—as against the City—fails for two additional reasons. First, for the reasons set forth above with respect to Plaintiffs' official-capacity claims, Plaintiffs have not pleaded facts showing a "municipal policy or custom" sufficient to establish liability against the City. *See supra* Part III.A.2.a. Second—and, again, as discussed above—respondeat superior may not serve as the basis for imposing § 1983 liability. *See, e.g.*, *Monell*, 436 U.S. at 691 (holding that, although municipalities are suable entities under § 1983, "a municipality cannot be held liable under § 1983 on a respondeat superior theory"); *Milligan-Hitt*, 523 F.3d at 1223 (noting that § 1983 "rejects the tort principle of respondeat superior and does not subject municipalities to vicarious liability for the acts of their employees"). Plaintiffs have not alleged facts to show that the City engaged in any affirmative acts related to the alleged due process violation. Dismissal is warranted on these additional bases.

### B. State Law Claims

Plaintiffs also assert a number of state law tort claims, including claims for invasion of privacy (false light, defamation, and intrusion upon seclusion), intentional infliction of emotional distress, negligent supervision, and negligent entrustment. Doc. 32. The Court had original jurisdiction over Plaintiffs' federal § 1983 claim. However, given its dismissal of that claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and therefore dismisses those claims without prejudice.

A district court has discretion to exercise supplemental jurisdiction over state law claims that derive from "a common nucleus of operative fact" as a pending federal claim. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997); *see also* 28 U.S.C. § 1367(a). In deciding whether to exercise supplemental jurisdiction over state law claims, the district court should consider whether the values of judicial economy, convenience, and fairness would be served by retaining jurisdiction. *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013). A district court may decline supplemental jurisdiction when the claims over which it had original jurisdiction have been dismissed. *See, e.g.*, *Exsum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004); *Heffington v. Derby United Sch. Dist. 260*, 2011 WL 5149257, at *3 (D. Kan. 2011). Here, the proceedings are at an early stage and the remaining causes of action—following dismissal of Plaintiffs' § 1983 claim—are purely state law claims. Considering the various factors, therefore, the Court declines to exercise supplemental jurisdiction over the state law claims. These claims are dismissed without prejudice for lack of jurisdiction.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' motions to dismiss the amended complaint (Docs. 44, 46) are GRANTED IN PART. Plaintiffs' claim pursuant to 42 U.S.C. § 1983 is DISMISSED WITH PREJUDICE. Plaintiffs' remaining Kansas state law claims are DISMISSED WITHOUT PREJUDICE because the Court declines to exercise supplemental jurisdiction.

IT IS SO ORDERED.

Dated: April 23, 2019  /s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE